## COPPER RIVER PACKING CO. v. ALASKA S. S. CO.

Circuit Court of Appeals, Ninth Circuit.    October 24, 1927.

No. 5222.

1. **Shipping** ⬡103—Contract to furnish sufficient vessels to handle shipper's seasonal requirements with reasonable promptness held not discriminatory, nor to give unreasonable preference (46 USCA § 812).

Contract in which steamship company agreed to transport property of salmon packing company and to furnish sufficient vessels to handle shipments with reasonable promptness, subject to its regular rules, rates, and tariff, requiring relatively large seasonal shipments in fall and spring, *held* not unfair or discriminatory against any shipper nor did it give any undue or unreasonable preference or advantage to such shipper, in violation of Act Sept. 7, 1916, § 14, as amended by Act June 5, 1920, § 20 (USCA § 812 [Comp. St. § 8146gg]).

2. **Shipping** ⬡103—That steamship company might violate law by giving undue preferences to shipper held not to invalidate contract to furnish reasonably prompt transportation (46 USCA § 812).

The mere fact that steamship company might violate the law by giving undue preferences, within Act Sept. 7, 1916, § 14, as amended by Act June 5, 1920, § 20 (46 USCA § 812 [Comp. St. § 8146gg]), such as loading particular shipper's shipment on a fixed day, and expediting its freight to the disadvantage of prior shippers offering freight of a similar character and to the same point, does not invalidate contract to furnish such service as might be required to take care reasonably of shipper's necessities.

3. **Shipping** ⬡132(3)—Presumption is that steamship company will not violate law in carrying out contract of affreightment.

Presumption is that steamship company, in carrying out contract of affreightment, will conform to the requirements of the law.

4. **Shipping** ⬡132(6)—Whether steamship company furnished vessel with reasonable promptness, as specially contracted, held fact question for jury.

In salmon packing company's action for damages for breach of special contract of affreightment, question whether defendant furnished vessel with reasonable promptness, as required by contract, *held* one of fact for jury.

5. **Shipping** ⬡132(3)—Burden of excusing refusal to transport shipment for salmon packing company, in violation of special contract, held on steamship company.

Where steamship company contracted to furnish sufficient vessels to handle salmon packing company's shipments with reasonable

promptness, and packing company proved capacity of steamship company's vessel sailing on a certain date and demand for space for shipment, with tender of freight and refusal thereof several days before it was loaded, it made out a case of breach of special contract of affreightment, and burden of showing any valid excuse for violation thereof was on steamship company.

**6. Shipping ⚖=>132(5)—Exclusion of evidence that steamship company's agent had notice of shipper's requirement before contract was executed, and was notified of necessity of furnishing shipping vessels, held error.**

In action for breach of special contract requiring steamship company to furnish sufficient vessels to handle salmon packing company's shipments and for special damages, exclusion of evidence that, before contract was executed, plaintiff's agent told defendant's agent that it would require a quantity of empty cans on a certain date, that after the contract was executed defendant's agent stated that he knew plaintiff's requirements, that defendant could be relied on to transport the required cans on one of its ships, that on certain date plaintiff notified defendant that it needed the cans, and that unless the cans were delivered heavy loss would result, *held* error.

In Error to the District Court of the United States for the Northern Division of the Western District of California; Jeremiah Neterer, Judge.

Action by the Copper River Packing Company against the Alaska Steamship Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Kerr, McCord & Ivey, of Seattle, Wash., for plaintiff in error.

Lawrence Bogle, Cassius E. Gates, and Edwin G. Dobrin, all of Seattle, Wash., for defendant in error.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

HUNT, Circuit Judge. Plaintiff, a salmon packing company, has a cannery at Nellie Juan, Alaska, with a capacity of from 1,200 to 2,000 cases of salmon per day. The season begins about July 4th and ends about the 18th of August of each year. The steamship company and plaintiff entered into a contract in March, 1922, by the terms of which the steamship company would deliver or receive at ship's tackle all the property owned or controlled by the packing company covered by the agreement, which would require transportation to or from the wharf, it being understood that the bulk of the packing company's north-bound shipments moved in relatively large shipments in the spring and south-bound shipments in relatively large shipments in the fall. The steamship company agreed to furnish sufficient vessels to handle the north-bound shipments in the spring and the south-bound shipments in the fall "with reasonable promptness and dispatch, and at other times during the season to furnish such additional vessels, either direct or by detours from a regular route, as may be reasonably required by the necessities of the second party's business." The packing company was to ship exclusively by the steamers of the defendant company. All property to be transported was to be received, held, carried, and delivered by the steamship company subject to the conditions of its regular and then current shipping receipt, and, except as otherwise specifically provided, to the rules, rates, and conditions of the then current freight tariff. Provisions covered specific rates upon fish in cans and upon empty cans. In consideration of the obligations on the part of the steamship company to furnish such service as might be required, "to reasonably take care of second party's necessities," it was agreed that, in case any freight covered by the agreement should be transported to or from the wharf by any other vessel than one belonging to the steamship company, such violation of the agreement would give the shipping company an option to terminate the agreement upon notice to the packing company.

The amended complaint averred that the Alameda was one of the boats operated by defendant; that plaintiff tendered to defendant for transportation on the Alameda 2,500 cases of cans on her voyage leaving Seattle about August 9, 1922, for delivery to Nellie Juan, and that five days before the Alameda sailed defendant refused to carry the cans, in violation of the terms of the contract; that the Alameda could have delivered the cans if they had been shipped to plaintiff not later than August 15th; that the cans measured 60 tons and about 13 tons dead weight; that plaintiff was obliged to pack its red salmon in a way which caused it to lose large profits, to its damage in the sum of $7,375.

Defendant pleaded its general obligations as a common carrier, lack of space, and lack of reasonable notice.

In presenting its evidence plaintiff offered the contract, but upon objection the court ruled that it was not admissible unless the shipping receipt was included; also because, under the allegations of the complaint, it was not averred that there was available space on the Alameda. Thereupon, in view of what the court said, the plaintiff amended its complaint by alleging that there was available space for carrying the cans, and

the contract and receipt and tariff were put in evidence.

The testimony was that plaintiff shipped all of its goods over defendant's line; that the Alameda had a capacity of about 1,400 tons; that about August 1, 1922, it was discovered that plaintiff would need 2,500 cases of half-pound flat cans in Alaska, and telegraphed on August 4th to the American Can Company at Seattle to "ship on the Alameda leaving Seattle August 8, 2,500 cases," etc; that the can company replied under date of August 5th, stating they could not get space on the Alameda, but could possibly make "Watson 15th or Northwester 19th. Everything loaded. Advise at one if want cans then." The telegraphic reply, offered, but excluded, was to the effect that, if the can company could not ship the cans via the Alameda, not to ship at all. It was proved that Nellie Juan is about 12 miles off the regular route of the defendant's ships; that the 2,500 cases of cans would occupy a space 10x10x25 feet long; that if the cans had been shipped on the Alameda they would have arrived at Nellie Juan on the 14th of August. Thereupon plaintiff sought to prove that it had red salmon sufficient to fill the cans referred to in the telegram. Defendant objected, and the court held that plaintiff must first prove that there was no space available on the Alameda before it could go into the question of damages at all.

Plaintiff then offered to prove that in the latter part of March, 1922, its representative told the manager of the steamship company that it would require a quantity of cans the latter part of July or first of August on some vessel sailing about that time, and that the agent of the shipping company said he knew what the requirements were, and that defendant could be depended upon to supply the cans on one of its boats leaving about that date; that, if the cans had been delivered on the Alameda, plaintiff could have packed them, and that the market value, less the cost of packing, would have been $10,575, which would have been the measure of profit that plaintiff would have realized, had defendant not violated its contract of shipment; that in order to minimize the damage plaintiff packed the red salmon in tall cans, which reduced the damages to $7,375; that plaintiff notified the steamship company on August 2, 1922, that it needed cans, and that the loss would be almost irreparable if the defendant company failed to deliver them; that the steamship company never began loading the Alameda until the day before the vessel sailed on August 9th, and that when the order to ship was received and refused on August 5th the ship had not commenced to load; that the traffic manager of the steamship company stated in October, 1922, that the shipping company could have shipped the cans, and could and would have delayed shipment of certain mining machinery consigned to a copper company in Alaska in which the defendant company was financially interested.

All the offers were rejected; exceptions were saved. Motion for nonsuit was granted, and judgment was entered in favor of defendant.

[1, 2] In our opinion the contract—a special one of affreightment—makes no unfair or unjustly discriminatory arrangement against any shipper in respect to cargo space, due regard being had for the proper loading of the ship and the available tonnage; nor does it give any undue or unreasonable preference or advantage to defendant or its traffic. Act of Sept. 7, 1916, § 14 as amended by Act June 5, 1920, 41 Stat. 996, § 20 (46 USCA §.812 [U. S. Comp. St. Ann. Supp. 1923, p. 2341]). It was not a booking of the cans; the contract was not a specific agreement with defendant for the reservation of space for transportation of the cans on a particular ship in advance of its sailing date, Ocean S. S. Co. v. Savannah Locomotive Wks., 131 Ga. 831, 63 S. E. 577, 20 L. R. A. (N. S.) 867, 127 Am. St. Rep. 265, 15 Ann. Cas. 1044; Merchants' & Miners' Trans. Co. v. Granger & Lewis, 132 Ga. 167, 63 S. E. 700. The mere fact that the steamship company might violate the law by giving undue preferences, such as loading plaintiff's cans on a fixed day and expediting freight of a particular shipper, to the disadvantage of prior shippers who offered freight of a similar character for shipment to the same point, does not invalidate the agreement to furnish such service as might be required to take care, reasonably, of the necessities of the packing company. Reasonably to take care of such necessities is explained by the expressed mutual understanding of the parties that the bulk of the packing company's shipments of cans to Alaska would require movement in the spring and summer, which in turn would demand that the steamship company furnish in number and capacity sufficient vessels to handle such freight with reasonable promptness as might be required.

[3] The presumption is that the defendant company, in carrying out the contract, would conform to the requirements of the law. In American Railway Express Co. v. Lindenburg, 260 U. S. 584, 43 S. Ct. 206, 67 L. Ed.

414, the Supreme Court, referring to an interstate carrier, quoted from an earlier case, Cincinnati, New Orleans & Texas Pacific Railroad Co. v. Rankin, 241 U. S. 319, 36 S. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265, saying: "It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law. Such a carrier must comply with strict requirements of the federal statutes or become subject to heavy penalties, and, in respect of transactions in the ordinary course of business, it is entitled to the presumption of right conduct." Northern Pacific R. Co. v. St. Paul & Tacoma Lumber Co. (C. C. A.) 4 F.(2d) 359.

Davis v. Cornwell, 264 U. S. 560, 44 S. Ct. 410, 68 L. Ed. 848, one of the cases cited by defendant in error, is inapplicable. There the transportation service to be performed was that of a common carrier under published tariffs, and not under a special contract. The court held that the promise of the agent of the company that cars for loading cattle would be available on a day named imposed a greater obligation upon the carrier than that implied in the tariff, where the obligation was to use diligence to provide upon reasonable notice cars for loading at the time desired. The court reaffirmed the ruling in Chicago, etc., Co. v. Kirby, 225 U. S. 155, 32 S. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501, that a special contract to transport a car by a particular train on a particular day is illegal, when not provided for in the tariff.

[4] Obviously, that any particular vessel should be employed to transport cans was of no moment to plaintiff; what it wished was to have the cans shipped in time to meet the necessities of their packing business, which was confined to a limited time. In calling for shipment by the Alameda to leave Seattle on August 8th, plaintiff simply emphasized its need for cans about the date that ship would arrive at Nellie Juan. If defendant had shipped the cans by any other vessel, which could have delivered them about August 14th, no cause for complaint could have existed. As presented, the main issue —the question of reasonable promptness— became one of fact, dependent upon the availability of space upon a ship of defendant leaving Seattle about August 9th. The court, therefore, should have submitted the issues to the jury.

[5] We think the court erred in requiring plaintiff to prove that there was space available aboard the Alameda at the time of the tender of the freight. It would be practically impossible, ordinarily, for shippers to know whether a carrier had space for a limited quantity of merchandise offered, and in the present case, inasmuch as the contract fixed the obligation to carry with reasonable promptness, when plaintiff proved the capacity of the defendant's ship and that demand was made for space for the cans, and that tender of the freight was made and refused several days before the ship was loaded, its case was made out, and the burden of showing any valid legal excuse that may have existed for default in performance was cast upon defendant. Clark v. Barnwell, 12 How. 272, 13 L. Ed. 985; Columbus R. Co. v. Columbus, 249 U. S. 399, 39 S. Ct. 349, 63 L. Ed. 699, 6 A. L. R. 1648; Inter-Coast Steamship Co. v. Seaboard Transportation Co. (C. C. A.) 291 F. 13.

[6] The complaint having alleged special damages, including loss of profits, the court should have permitted plaintiff to prove that before the contract was executed plaintiff's and defendant's agents had a conversation wherein plaintiff's agent told defendant's agent that it would require a quantity of cans about the 1st of August, and that after the contract was executed the defendant's agent stated that he knew what plaintiff's requirements were, and defendant could be relied upon to transport the required cans on one of its ships, and that on August 2d plaintiff notified defendant that it needed the cans, that the fish were ready to pack, and that unless the cans were delivered the loss would be very heavy. 10 C. J. 316; Morrow v. M. P. R. Co., 140 Mo. App. 200, 123 S. W. 1034. Those were matters which arose from the circumstances and character of the particular case, and of which defendant must have had knowledge at the time of the making of the contract. 8 R. C. L. 459, § 27; 1 C. J. § 199.

The judgment is reversed, and the cause is remanded, to be proceeded with in accordance with the views herein expressed.