R. L. HEFLIN, Inc., et al. v. TEXAS OCE-
ANIC S. S. CO. et al.

No. 9673.

Court of Civil Appeals of Texas. Galveston.
March 17, 1932.

Rehearing Denied Sept. 29, 1932.

Second Rehearing Denied Oct. 13, 1932.

Williams, Neethe & Williams and McDonald & Wayman, all of Galveston, for appellants.

Levy & Levy, of Galveston (M. L. Cook, of Galveston, of counsel), for appellees.

GRAVES, J.

This sufficient and correct general statement, changed in some immaterial details, is taken from appellants' brief:

"This is a suit by R. L. Heflin, Inc., and New Orleans Export Company, Ltd., against Texas Oceanic Steamship Company and T. R. Hancock, for damages for breach of contract. The trial court sustained general demurrers, and plaintiffs having refused to amend, dismissed the suit. The plaintiffs have appealed.

"The petition sets forth that plaintiffs were engaged at Galveston, Texas, in exporting cottonseed meal, cake, and oil, to the British Isles and Europe, and that defendants were severally managing owners, operators, and charterers, of steamships operating regularly and frequently from Galveston to the ports of those countries. In July, 1929, plaintiffs informed defendant Hancock, President of defendant, Texas Oceanic Steamship Company, that plaintiffs had an offer from parties in Liverpool to purchase 1500 tons of cottonseed meal for Leith and Aberdeen, Scotland, who demanded as one of the conditions of purchase, that no other meal would be shipped to those ports on the same steamer or steamers that might be selected for the transportation, this being what is commonly known in shipping circles as the 'sole discharge clause.' Defendant Hancock, after being so informed, agreed to transport the meal on that condition on a United States Shipping Board, or other 100 A-1 steamer or steamers, to sail not later than October, or the first half of November, 1929. Plaintiffs acted on this agreement, and incorporated the 'sole discharge clause' in their contract of sale with the Liverpool buyers. When written confirmations of the verbal agreement signed by Texas Oceanic Company were submitted to plaintiffs for approval and acceptance, they did not contain the 'sole discharge clause.' This clause was left out of the confirmations at the special instance and request of defendant Hancock, but with the understanding that it was to be a part of the engagement. With this verbal understanding, plaintiffs approved and accepted the confirmations. Defendants furnished the 'SS Steadfast' to transport the meal, but violated the 'sole discharge' provision of the agreement, in that the 'Steadfast' was permitted to take 200 tons of cottonseed meal of another shipper aboard and to transport the same thereon, along with that of plaintiffs, to Aberdeen. When the meal arrived at Aberdeen, the buyers refused to accept it, because of the violation of the 'sole discharge' clause. Due to a severe decline in the market, the meal was resold at a loss of some $4,000.00 to plaintiffs, which they sought to recover against the defendants, either or both. Judgment was prayed for against defendant Hancock individually, if he was not authorized to enter into the agreement in behalf of Texas Oceanic Steamship Company, or failed to bind that com-

pany on that part of the verbal agreement that was left out of the confirmations."

Under the appeal it is urged that the court erred in sustaining the general demurrers, because the plaintiffs stated a good cause of action for damages in properly declaring upon the breach by defendants of a legal and binding contract.

The appellees seek to sustain the judgment on two grounds: (1) The contract was in violation of "(a) title 46, c. 23, § 812, USCA, (b) title 46, c. 23, § 815, USCA, (c) title 18, c. 4, § 88, USCA, and (d) title 15, c. 1, § 1, USCA, each and respectively, as well as the common law and public policy"; (2) "such written contract or contracts (the confirmations as pleaded and the bill or bills of lading as mentioned), complete in and of themselves, cannot be varied by showing that prior or contemporaneous agreements were made and which were not reduced to writing, but, in accordance with the understanding of the parties thereto, were to remain in full force and effect. Elliott on Contracts, vol. 2, page 927."

As concerns the latter of these defensive presentments, it cites a recognized rule of evidence, applicable in the absence of fraud, accident, or mistake (R. S. art. 3687, rule 20, subd. 19, and cited authorities of V. S. T. C. S. of 1914, vol. 3, p. 2574), but it may not be raised on general demurrer (Townes' Texas Pleading [2d Ed.] bottom page 530 and top of 531, and appended cases).

Upon the former, we agree with appellants that the contract declared upon should not be held to be illegal, and, deeming the reasons for that holding to be well stated in their brief, adopt this much of it as expressive of our own conclusions on the subject:

"We do not believe the federal Anti-Trust Law has application, and for that reason we shall not discuss that statute. Section 812 of the Shipping Act seems to us to be the only one that can possibly have application. The material part of this section follows:

" 'No common carrier by water shall, directly or indirectly, in respect to the transportation by water of passengers or property between a port of a State, Territory, District, or possession of the United States, and any other such port, or a port of a foreign country. * * *

" 'Fourth. Make any unfair or unjustly discriminatory contract with any shipper based on the volume of freight offered, or unfairly treat or unjustly discriminate against any shipper in the matter of: (a) cargo space accommodations or other facilities, due regard being had for the proper loading of the vessel and the available tonnage; (b) the loading and landing of freight in proper conditions; or (c) the adjustment and settlement of claims.

" 'Any carrier who violates any provision of this section shall be guilty of a misdemeanor punishable by a fine of not more than $25,000 for each offense.'

"The material part of section 815 follows:

" 'It shall be unlawful for any common carrier by water, or other person subject to this chapter, either alone or in conjunction with any other person, directly or indirectly. * * *

" 'First. to make or give any undue or unreasonable preference or advantage to any particular person, locality, or description of traffic, in any respect whatsoever, or to subject any particular person, locality, or description of traffic, to any undue or unreasonable prejudice, or disadvantage, in any respect whatsoever.'

"Defendants were not bound by the contract to refuse to transport the meal of any other shipper or in any way to interfere with meal that other shippers might desire to have transported to Leith and Aberdeen. The parties merely agreed that, from the many steamers sailing regularly and frequently from Galveston, defendants would select one or more that did not have as cargo cotton-seed meal for either of these minor ports in Scotland. The meal in question did not have to be transported on one of the ships defendants operated, owned, or chartered. They had the right to select any United States Shipping Board or other 100 A-1 ship. This was not an engagement for space on any particular vessel or for any particular sailing, but, on the other hand, allowed defendants a wide range as to time of sailing and the selection of a vessel to transport the meal. Surely, the contract could have been legally carried out, if defendants had gone to the trouble and expense of finding a vessel, or arranging for one, that did not have cotton-seed meal as a part of its cargo for Leith or Aberdeen. It should be presumed that they could have done so unless it clearly appears otherwise.

"It is not against the law for parties who own, operate, or charter ships to arrange cargoes so that one ship will carry one kind of cargo, and another will carry a different cargo. In fact, the statute in question recognized this, when it provided that, in determining whether shippers had been unfairly treated or unjustly discriminated against, due regard should be had for the proper loading of the vessel. Defendants under the contract had from July until November in which to make the necessary arrangements for transporting this meal on a ship that did not have as its cargo the same commodity for Leith and Aberdeen. It should be presumed that they would during this interval

of time so arrange their cargoes as to lawfully comply with the shipping engagement with plaintiffs.

"The agreement in question was a special contract of affreightment. It was not a contract with a common carrier under published tariffs, such as is condemned by this statute. Such a contract as the latter would have to be made, and was made, when the vessel was designated, and the meal tendered for shipment. Then a bill of lading in the usual form was issued. Plaintiffs did not contract with defendants as a common carrier, but entered into a special agreement of affreightment, which contemplated that another contract would later be entered into with some steamship or steamship line as a common carrier when the meal was taken aboard ship. The distinction that we here suggest is controlling, and was recognized by the United States Circuit Court of Appeals in Copper River Packing Co. v. Alaska S. S. Co., 22 F.(2d) 12, where the court, in construing the statute in question, held that a contract by which a steamship company agreed to transport certain property and to furnish sufficient vessels to handle shipments with reasonable promptness, was not unfair or discriminatory against any shipper, and did not give any undue or unreasonable preference or advantage to the shipper with whom the special contract was made. The mere fact that the steamship company might give an undue preference to the shipper with whom the contract was made, to the disadvantage of another shipper, was held not enough to invalidate the agreement. So, in the case at bar, the mere fact that defendants might have discriminated against some other shipper should not be held to invalidate the contract. They certainly did not have to discriminate against any other shipper.

"Special contracts, comparable, it seems to us, to the one involved in the case at bar, were held valid in Hood Rubber Co. v. Rutland Transit Co. (C. C.) 161 F. 790, and The Ile de Sumatra (D. C.) 286 F. 437. It was held in the Hood Rubber Company Case that the owner of a line of lake steamers could make a special contract with shippers not to place more than $100,000 worth of goods on any one of the vessels at one time. This was held to be a valid contract, and to have been violated by the placing aboard of merchandise valued at some $350,000. In The Ile de Sumatra, the court upheld a special contract covering an early shipment of onions, where the contract provided that the ship should carry no other onions, and fixed the number and order of ports at which she should call. In this latter case, however, the court did not discuss the question of illegality, as it was not raised. The court, however, did hold that such a special contract was not contradictory of a bill of lading.

■ "It is a well-established rule that, on general demurrer, unless the facts alleged clearly show that a contract was unlawful, it will be presumed that it did not violate the law. 10 Texas Jur. § 296. The contract on its face is not in violation of the statute, because it does not bind defendants to unfairly treat or unjustly discriminate against any shipper. All that can be said is that the performance of the contract might possibly result in some shipper being denied the privilege of having his meal transported on the vessel selected to carry plaintiffs' meal. The contract should not be held invalid because it is possible to conceive of conditions whereby it might be illegal."

It follows that the judgment so entered below should be reversed, and the cause remanded for another trial. It will be so ordered.

Reversed and remanded.

### On Appellees' Motion for Rehearing.

The parties to this cause have favored the court with very able oral and written arguments, the appellants in support of its original judgment, the appellees contending that it was in error upon both supporting grounds as enunciated in the court's opinion.

Upon a mature reconsideration in the light of the help thus accorded, we are constrained to adhere to the determination before made, and, in doing so, to reiterate without change or addendum the holding that the contract as declared upon was not illegal. We desire, however, to modify the opinion in so far as it held that appellees' insistence that appellants' declaration on the prior verbal agreement that no other meal for those ports would be transported on the same steamer varied the subsequent written contract could not be raised on general demurrer. The opinion contained this paragraph in reference to that feature:

"As concerns the latter of these defensive presentments, it cites a recognized rule of evidence, applicable in the absence of fraud, accident, or mistake (R. S. art. 3687, rule 20, subd. 19, and cited authorities of V. S. T. C. S. of 1914, vol. 3, p. 2574), but it may not be raised on general demurrer (Townes' Texas Pleading [2d Ed.] bottom page 530 and top of 531, and appended cases)."

That pronouncement, if not actually unsound, is at least very doubtful, and is now withdrawn.

■ It seems clear to us, however, that the general demurrer was not good to the pleading as thus drawn, and that it was entirely competent to declare upon the two undertakings in the same cause of action; the averment of the understanding that the 1,500 tons specified would be the only meal on the vessel furnished, termed the "sole discharge clause,"

being taken as true, presented in legal effect a collateral, or separate, parol agreement, that was further alleged to have been not only the controlling inducement for the acceptance of the written confirmation set out, but also to have been omitted from it at the special instance and request of the appellees. It was therefore plainly an independent undertaking, not a part of the writing, nor contradictory of its terms, but entered into as an inducement to the making of it. This, under well-settled authority, was subject to proof and enforcement as such, although not referred to in nor made a part of the writing.

The following authorities, it is thought, fully support this conclusion: 17 Texas Jurisprudence, "Evidence," Civil Cases, pars. 358, 370, and 371; New York Life Insurance Company v. Thomas, 47 Tex. Civ. App. 149, 104 S. W. 1074; Callaway v. Albin, 114 Tex. 5, 261 S. W. 372; Loveless v. Johnson (Tex. Civ. App.) 274 S. W. 658; Lee v. First National Bank (Tex. Civ. App.) 254 S. W. 394; Downey v. Hatter (Tex. Civ. App.) 48 S. W. 32; Blair v. Slosson, 27 Tex. Civ. App. 403, 66 S. W. 112.

The motion has been overruled.

Overruled.